**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 7** |
| | ) | |
| **LAKEWOOD ENGINEERING & MFG. CO.** | ) | **Case No. 09-05320** |
| | ) | |
| | ) | |
| **Debtor.** | | |

**FINAL ORDER AUTHORIZING CHAPTER 7 TRUSTEE: (A) TO USE CASH COLLATERAL; (B) INCUR POSTPETITION DEBT; AND (C) TO GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY TO WELLS FARGO FOOTHILL, INC.**

This matter came before this Court on the motion (the "Motion") of the Trustee for the estate of Lakewood Engineering & Mfg. Co. (the "Debtor") requesting that this Court enter an order: (1) authorizing the Trustee to use certain cash collateral; (2) incur Postpetition Debt; and (3) granting certain liens and other relief to Wells Fargo Foothill, Inc. (the "Agent") as administrative agent for certain lenders to Debtor under the Prepetition Documents or the Postpetition Documents, as applicable in the context of this Order (Agent, in its capacity as a lender, together with such lenders, the "Lenders"). Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference are made a part hereof.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the Relief Date.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion and having completed a hearing pursuant to Code § 363 and Fed. R. Bankr. P. 4001(b) and (c), and objections, if any, having been withdrawn or resolved or overruled by the Court, **THE COURT HEREBY FINDS THAT:**

A. On the Filing Date, International Paper Company, Inc., Thynk Design, Inc., Selco Products Company and The Stonegate Group, Ltd. (collectively, the "Petitioning Creditors") filed an involuntary petition for relief against Debtor under chapter 7 of the Code.

B. On March 10, 2009, the Trustee was appointed.

C. The Court has jurisdiction over the Case and this proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

D. Subject to Paragraph 8(a), the Trustee has stipulated and represented to the Court that: (1) the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship among Debtor, Agent and Lenders; (2) as of the Relief Date, Debtor is liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an allowed claim in an amount not less than $8,179,626.13, exclusive of accrued and accruing Allowable 506(b) Amounts, if any; (3) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Documents; (4) the Prepetition Liens, among other things, secure payment of all of the Prepetition Debt; and (5) the Prepetition Liens are First Priority Liens, subject only to Permitted Liens.

E. The Trustee represents, and the Court finds that upon the entry of this Order, Agent's and Lenders' interests in the Prepetition Collateral will be adequately protected. Such finding is made without prejudice to Agent's and Lenders' rights to later assert that their interest in the Aggregate Collateral lacks adequate protection.

F. A need exists for the Trustee to use Cash Collateral and to incur Postpetition Debt in order to enable the Trustee to conduct an orderly wind-down and liquidation of Debtor's business and assets.

G. Trustee is unable to obtain unsecured credit allowable under Code § 503(b)(1) sufficient to finance the orderly wind-down and liquidation of Debtor's business. Except as provided below, Debtor is unable to obtain credit allowable under Code § § 364(c)(1), (c)(2) or (c)(3) on terms more favorable than those offered by Agent.

H. The terms of the Postpetition Debt have been negotiated in good faith and at arms' length, and the Postpetition Debt is being extended in good faith, as that term is used in Code § 364(e).

I. The Trustee hereby represents that under the circumstances of the Case, the terms and conditions of this Order are a fair and reasonable response to the Trustee's request for Agent's and Lenders' consent to the use of Cash Collateral and for Debtor's

incurrence of Postpetition Debt, and the entry of this Order is in the best interests of Debtor's estate and its creditors.

    J.  The notice provided by the Trustee of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (c) and 9014 and Code §§ 102(1), 363 and 364(c) and were otherwise sufficient and appropriate under the circumstances.

    **WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED, AND THAT:**

    1.  Authorization to Use Cash Collateral. The Trustee is authorized to use Cash Collateral: (a) solely in accordance with and pursuant to the terms and provisions of this Order; and (b) only to the extent required to pay those expenses enumerated in the Budget as and when such expenses become due and payable; provided that the Trustee shall first use the portion of Cash Collateral consisting of funds in the Specified Accounts to satisfy expenses enumerated in the Budget as and when such expenses become due and payable, and to the extent funds in the Specified Accounts are insufficient to satisfy such expenses, the Trustee shall thereafter use all other Cash Collateral. Prior to the Termination Date and indefeasible payment in full of the Aggregate Debt, the Trustee may not use or seek to use Cash Collateral other than pursuant to the terms of this Order. Notwithstanding anything to the contrary in this Paragraph 1, however, the Trustee is hereby authorized and directed to use Cash Collateral to pay Allowable 506(b) Amounts, when due and payable; provided, however, that such applications shall be provisional subject to the terms of Paragraph 7(b).

    2.  Procedure for Use of Cash Collateral.

    (a)  Delivery of Cash Collateral to Agent. Subject to Paragraph 7(l), the Trustee is authorized and directed to deposit all Cash Collateral now or hereafter in his possession or under his control into the existing Blocked Account maintained at Bank (or to otherwise deliver all such Cash Collateral to Agent in a manner satisfactory to Agent) promptly upon receipt thereof. Agent shall thereafter apply such Cash Collateral in accordance with Paragraph 6(d) of this Order. All amounts distributed from the Blocked

Account to Agent shall be deemed disbursed or turned over by the Trustee for purposes of Code § 326(a).

(b) Account Debtors. Without further order of the Court, the Trustee shall, and Agent may directly, notify in writing all account debtors or existing and future accounts receivable of Debtor and instruct all such account debtors to make payments directly into the Blocked Account or to such other deposit account as Agent shall specify.

(c) Cash Collateral in Agent's Possession. Agent is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its possession or under its control which constitute Aggregate Collateral or proceeds of Aggregate Collateral.

3. Authorization To Incur Postpetition Debt.

(a) Postpetition Documents. The Trustee, on behalf of Debtor's estate, is hereby authorized and agrees to: (1) execute the Postpetition Documents and to make immaterial modifications thereto, if the Trustee receives the prior written consent of Agent and Lenders, without further order of this Court; and (2) perform his obligations under and comply with all of the terms and provisions of the Postpetition Documents and this Order. Upon execution and delivery thereof, the Postpetition Agreement and other Postpetition Documents shall constitute valid and binding obligations of Debtor enforceable in accordance with their terms. To the extent there exists any conflict among the Postpetition Documents, the terms of the Interim Order and the terms of this Order with respect to any term of the Postpetition Debt or Postpetition Collateral, this Order shall govern and control.

(b) Permitted Uses of Postpetition Debt. To the extent that Cash Collateral received from and after the Filing Date is sufficient to fund the payment of the expenses permitted under Paragraph 1 of this Order, then the Trustee is hereby authorized to use such Cash Collateral; provided however, to the extent that there is not sufficient Cash Collateral for such purposes, then the Trustee is hereby authorized to borrow Postpetition Debt pursuant to the terms of this Order. Subject to the provisions of Paragraph 3(a) above, the Trustee is authorized to incur Postpetition Debt solely: (a) in accordance with and pursuant to the terms and provisions of this Order; and (b) to the extent required to pay those expenses enumerated in the Budget as and when such expenses become due and payable. Notwithstanding

anything to the contrary in this Paragraph 3, however: (1) the Trustee is hereby authorized and directed to incur the Postpetition Debt at any time to pay Allowable 506(b) Amounts, the Carveout, and the Postpetition Charges, (2) if Agent advances monies to the Trustee and the Trustee uses such monies other than in accordance with or pursuant to the terms or provisions of this Order or the Postpetition Documents, such advances shall be considered Postpetition Debt for purposes of this Order, and (3) upon the reduction of the Aggregate Debt to zero, Agent shall have no further obligation to extend Postpetition Debt for purposes of satisfying expenses enumerated in the Budget, with the exception of unpaid expenses that have been incurred in accordance with the Budget, the Postpetition Agreement and this Order.

(c) Principal Terms of Postpetition Debt.

(i) Conditions to Postpetition Advances. At Agent's and Lenders' election, no Postpetition Debt shall be incurred hereunder until the Postpetition Agreement has been executed and delivered by Debtor and it has become effective in accordance with Section 3.5 thereof.

(ii) Maximum Amount. In no event shall the Aggregate Debt exceed the Maximum Amount. No other Advances shall be made under the Credit Agreement, other than revolving advances of Postpetition Debt in accordance with this Order.

(iii) Interest. The Postpetition Debt shall bear interest at a per annum rate equal to the rate as set forth in Section 2.3 of the Postpetition Agreement.

(iv) Maturity. The Postpetition Debt shall mature and be paid in full by the Trustee on the Termination Date.

(d) Superpriority Administrative Expense Status; Postpetition Liens. The Postpetition Debt is hereby granted superpriority administrative expense status under Code § 364(c)(1), with priority over all costs and expenses of administration of the Case that are incurred under any provision of the Code other than the Carveout. For the avoidance of doubt, the Carveout, as a Permitted Lien having priority over the Postpetition Debt, shall have priority over all other costs and expenses of administration of the Case incurred under any provision of the Code. In addition, Agent is hereby granted the Postpetition Liens to secure the Postpetition Debt. The Postpetition Liens: (1) are and shall be in addition to the Prepetition Liens; (2) pursuant to Code §§ 364(c)(2) and (c)(3), are and shall be First Priority Liens (subject only to the Prepetition Liens, Permitted Liens and the Carveout) without any

further action by the Trustee or Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall not be subject to any security interest or lien which is avoided and preserved under Code § 551; and (4) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case. Notwithstanding the foregoing, the Trustee is authorized and directed to execute and deliver to Agent such financing statements, mortgages, instruments and other documents as Agent may deem necessary or desirable from time to time. Further, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) payment of any fees or obligations to any governmental entity, in order for the Trustee to pledge, grant, sell, assign or otherwise transfer such leasehold interest or the proceeds thereof or other Postpetition Collateral related thereto, shall have no force and effect and shall not affect the status of the Postpetition Liens as First Priority Liens hereunder. Notwithstanding anything herein to the contrary, if and to the extent elected in writing by Agent, the Postpetition Liens shall be deemed to be subordinate to the Prepetition Liens pursuant to the terms and conditions of this Order.

4.    Carveout Terms. With respect to each Carveout Professional: (a) the Carveout for such Carveout Professional shall consist of the lesser of (A) the aggregate weekly line item amounts as provided in the Budget for such Carveout Professional for the period commencing on the Relief Date and ending on the Termination Date, and (B) the aggregate amount of allowed fees and expenses of such Carveout Professional that accrue during the period commencing on the Relief Date and ending on the Termination Date; (b) the Carveout, as it pertains to each Carveout Professional, shall be reduced on a dollar-for-dollar basis by Cash Collateral remitted by or at the consent of Agent on account of fees and expenses of such Carveout Professional; (b) property of the estate (other than property subject to an unavoidable lien in favor of Agent and Lenders) shall be used to pay any fees or expenses of such Carveout Professional before payments of such fees or expenses are made from proceeds of the Postpetition Debt or the Aggregate Collateral; (c) upon the Termination Date, Agent and Lenders shall have no further obligation to fund any fees or expenses of any Carveout Professional that accrued on, after, or (except as provided above) before the

Termination Date; and (d) the Carveout shall not include, and no Aggregate Collateral may be used to pay, any fees or expenses incurred by any entity (including, without limitation, the Trustee or any Carveout Professional), in connection with claims, actions or services adverse to Agent and Lenders, or their respective interests in the Aggregate Collateral, including, without limitation, (1) preventing, hindering or delaying Agent's enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred, (2) using or seeking to use Cash Collateral or selling any other Aggregate Collateral without Agent's consent, (3) incurring indebtedness without Agent's consent, or (4) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Aggregate Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of Agent and Lenders, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Agent and Lenders. Each Carveout Professional shall submit to the Trustee and Agent copies of its invoices for fees and expenses on a monthly basis, in arrears, not later than the 10th day of each month. Nothing herein shall be construed as consent by Agent to the allowance of any fees or expenses of any Carveout Professional or shall affect the right of Agent to object to the allowance and payment of such fees, costs or expenses, or the right of Agent to the return of any portion of the Carveout that is funded with respect to fees and expenses approved on an interim basis that are later denied on a final basis. No payment of the Carveout shall constitute a reduction of the Aggregate Debt. In order to enable the Agent and Lenders to provide the Postpetition Debt, Agent shall reserve against the maximum principal amount of Aggregate Debt set forth in Paragraph 3(c)(ii) above an amount equal to the sum of the aggregate amount of fees and expenses set forth in the Budget for the Carveout Professionals, minus the amount of Postpetition Debt funded with respect to Carveout prior the Termination Date (and any such amounts so funded shall be used exclusively by the Trustee for payment to the Carveout Professionals and for no other purpose).

     5.     Termination of Right to Use Cash Collateral And to Incur Postpetition Debt.

(a) Termination Date. Unless extended by the Court upon the written agreement of Agent, this Order and the Trustee's authorization to use Cash Collateral and incur Postpetition Debt pursuant to this Order will immediately terminate on the Termination Date without further notice or order of the Court. During the pendency of any motion filed by Agent alleging lack of adequate protection of its interests in the Aggregate Collateral, Agent shall have no obligation to consent to the use of Cash Collateral or to provide any Postpetition Debt.

(b) Rights Upon Termination. On the Termination Date, the Trustee's authorization to use Cash Collateral pursuant to this Order shall immediately terminate. Upon the Termination Date, without further notice or order of the Court, at Agent's election: (1) the Aggregate Debt shall be immediately due and payable; (2) subject to the payment of the Carveout existing as of the Termination Date, Agent shall be entitled to apply or set off any cash in Agent's possession or control to the Aggregate Debt in accordance with Paragraph 6(d) of this Order, until such Aggregate Debt is indefeasibly and finally paid in full; and (3) Debtor shall be prohibited from using any Cash Collateral for any purpose other than (i) first, to pay the Carveout, and (ii) second, application to the Aggregate Debt in accordance with Paragraph 6(d) of this Order, until such Aggregate Debt is indefeasibly and finally paid in full. Upon the Termination Date, at Agent's election and upon not less than five (5) business days' written notice to the Trustee: (1) without further order of the Court, Agent and Lenders shall have automatic and immediate relief from the automatic stay with respect to the Aggregate Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and shall be entitled to exercise all rights and remedies available to them under the Prepetition Documents, the Postpetition Documents, the Code and applicable non-bankruptcy law with respect to the Aggregate Collateral; and (2) the Trustee shall surrender the Aggregate Collateral to Agent and otherwise cooperate to assist Agent and Lenders in the exercise of the rights and remedies available to Agent and Lenders under the Prepetition Documents, the Postpetition Documents, the Code and applicable non-bankruptcy law with respect to the Aggregate Collateral. Only the Trustee may oppose such relief by Agent and the sole basis of such opposition shall be contesting the occurrence of an Event of Default.

6.      Adequate Protection of Interests of Agent and Lenders in the Prepetition Collateral and the Prepetition Liens. As adequate protection of the interests of Agent and Lenders in the Prepetition Collateral and the Prepetition Liens for the use of Cash Collateral and any decline in the value of the Prepetition Collateral in accordance with §§ 361 and 363 of the Code:

(a)      Priority of Prepetition Liens/Allowance of Agent's and Lenders' Prepetition Claim. Subject to the reservation of rights set forth in Paragraph 6 of this Order: (1) the Prepetition Liens shall constitute First Priority Liens, subject only to the Permitted Liens; (2) the Prepetition Debt constitutes the legal, valid and binding obligation of the Debtor, enforceable in accordance with the terms of the Prepetition Documents; and (3) Agent's and Lenders' claim with respect to the Prepetition Debt shall constitute an Allowed Claim in an amount not less than $8,179,626.13, exclusive of accrued and accruing Allowable 506(b) Amounts.

(b)      Agent Replacement Liens. Agent and Lenders are hereby granted the Agent Replacement Liens as security for repayment of the Prepetition Debt. The Agent Replacement Liens: (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be First Priority Liens (subject only to the Prepetition Liens, the Postpetition Liens, Permitted Liens and the Carveout) that are properly perfected, valid and enforceable without any further action by the Trustee or Agent and Lenders and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case. Notwithstanding the foregoing, the Trustee is authorized and directed to execute and deliver to Agent such financing statements, mortgages, instruments and other documents as Agent may deem necessary or desirable from time to time. All Cash Collateral used by the Trustee shall be deemed to be part of the Debtor's obligations owing to Agent and Lenders.

(c)      Allowed Code § 507(b) Claim. If and to the extent the adequate protection of the interests of Agent and Lenders in the Prepetition Collateral granted to Agent and Lenders pursuant to this Order proves insufficient, Agent and Lenders shall have an Allowed Claim under Code § 507(b), subject to the Carveout, in the amount of any such

insufficiency, with priority over: (1) all costs and expenses of administration of the Case that are incurred under any provision of the Code, including Code §§ 503(b), 506(c), 507(a), or 552(b); and (2) the claims of any other party in interest under Code § 507(b).

(d)     Application of Cash Collateral.  Subject to Agent's obligation to remit Cash Collateral to the Trustee pursuant to Paragraph 1(a) of this Order, Agent is authorized to apply all Cash Collateral now or hereafter coming into Agent's possession or control as follows:  (i) all proceeds of Prepetition Collateral shall be applied (1) first, to payment of all Prepetition Debt, including all Allowable 506(b) Amounts, until all Prepetition Debt is paid in full in cash; and (2) second, to payment of all Postpetition Debt; and (ii) all proceeds of Postpetition Collateral not otherwise constituting Prepetition Collateral shall be applied (1) first, to payment of the Postpetition Debt in respect of any Postpetition Charges, until paid in full in cash; and (2) second, ratably to pay the Postpetition Debt until paid in full in cash; provided, however that to the extent Agent and Lenders are obligated to return or disgorge any portion of the cash or non-cash proceeds of such disposition of Collateral, or any portion of such proceeds is otherwise rescinded or reduced for any reason, then in such event and to the extent of such return, disgorgement, rescission or reduction, the Prepetition Debt or Postpetition Debt, as applicable, shall be increased and reinstated as if no payment thereon had been made.

(e)     Prohibition Against Priming Liens.  No order shall be entered in this case authorizing the Trustee to incur debt secured by a lien which is equal to or superior to the Aggregate Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364 for the incurrence of such debt: (a) Agent has consented to such order; (b) there is no Aggregate Debt outstanding at the time of the entry of such an order, and no obligation of Lender to extend additional Postpetition Debt; or (c) such credit or debt is first used to immediately pay the Aggregate Debt in full.

(f)     Section 506(c).  Nothing in this Order shall be deemed to prohibit or otherwise restrict any claims properly made pursuant to Code § 506(c); provided, however, that nothing herein or in the Budget shall be deemed to constitute the Agent's or the Lenders' consent to any such claims under Code § 506(c).  All rights of all parties with

respect to any dispute arising from claims made under Code § 506(c) are hereby reserved. Notwithstanding anything herein to the contrary, no Carveout Professional shall be entitled to seek a claim against the Aggregate Collateral, directly or indirectly, or retain the proceeds of such claim, under Code § 506(c). Notwithstanding the foregoing, the Trustee agrees that there shall be no surcharge of the Aggregate Collateral for any purpose, unless agreed to in writing by Agent and Lenders. Therefore, at no time during the Case shall the surcharge provisions of Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) be imposed upon Agent or Lenders or any of the Aggregate Collateral for the benefit of any party in interest, including, without limitation, the Debtor, any of the Carveout Professionals, or any Trustee.

(g) Waiver of Right to Return/Consent to Setoff. Without Agent's prior written consent, the Trustee hereby waives its right: (1) to return any Aggregate Collateral or Aggregate Collateral pursuant to Code § 546(h); or (2) to consent to setoff pursuant to Code § 553.

(h) Releases and Validation of Prepetition Debt and Liens. The release, discharge, waivers and agreements set forth in this Paragraph 6(h) will be deemed effective upon the date that is sixty (60) days after the entry of this Order. The Trustee, on behalf of the Debtor and its estate, hereby: (i) releases and discharges Agent and each Lender, together with their respective affiliates, agents, attorneys, officers, directors and employees from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Prepetition Documents, any aspect of the prepetition relationship among Agent, Lenders and Debtor, or any other acts or omissions by Agent or Lenders in connection with any of the Prepetition Documents or their prepetition relationship with Debtor; and (b) waives any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability (under Code §§ 510, 544, 545, 547, 548, 550, 551, 552 or 553 or otherwise) of the Prepetition Debt and the security interests in and liens on the Prepetition Collateral in favor of Agent and Lenders (which liens and security interests are first priority subject only to the Permitted Liens).

7. Miscellaneous Provisions.

(a) Postpetition Charges. All Postpetition Charges are hereby approved and shall be promptly paid by the Trustee in accordance with this Order and the Postpetition Documents, and the Trustee is hereby authorized to pay the Postpetition Charges without the necessity of the Trustee, Agent or Lenders filing any further application with the Court for approval or payment of the Postpetition Charges; provided, however, that any fees and expenses of counsel incurred by Agent or Lenders shall be subject to any objection by the Trustee as set forth in Paragraph 7(b).

(b) Notice of and Objections to Allowable 506(b) Amounts. After such time as the proceeds of the Prepetition Collateral exceed the amount of the Prepetition Debt, Agent shall provide to the Trustee, by electronic mail, copies of all invoices sent by Agent's counsel (edited to delete any attorney-client or other confidential information) or Agent's other professionals (including, without limitation, any consultants, appraisers and financial advisors retained by Agent) to Agent with respect to the professional fees and related costs and expenses asserted as Allowable 506(b) Amounts that are incurred from and after the Filing Date. The Trustee may object to the reasonableness of any such fees, costs and expenses by filing a written objection within ten (10) days of receipt of the invoice to which the objection relates. However, any objection to any such fees, costs, or expenses shall be forever waived and barred unless: (1) the objection is filed with the Court and served upon Agent; and (2) the objection describes with particularity the items or categories of fees, costs and expenses that are the subject of the objection and provides the specific basis of the objection to each such item or category of fees, costs and expenses. Any hearing on an objection to the fees, costs and expenses of Agent set forth on any invoice shall be limited to the reasonableness or necessity of the particular items or categories of the fees, costs and expenses which are the subject of such objection. The disallowance of any such fees and expenses shall not affect Agent's and Lenders' right to collect such amounts from any person or entity other than Debtor.

(c) Indemnification. Debtor shall be deemed to continue to indemnify and hold harmless Agent and Lenders pursuant to Section 10.3 of the Credit Agreement and as otherwise set forth in and ratified by the Postpetition Agreement.

(d) Prepetition Documents; Conflicts. For the avoidance of doubt, notwithstanding any incorporation of terms of the Prepetition Documents into the Postpetition Documents, for purposes of Section 3.5 of the Credit Agreement and subject to Section 3.4 of the Credit Agreement, the Credit Agreement shall be deemed terminated as of the date of entry of an order for relief in this Case, and the Applicable Prepayment Premium (as defined in the Fee Letter) was due and payable as of such date. To the extent there exists any conflict between the Motion, the Prepetition Documents, the Postpetition Documents, the Interim Order and the terms of this Order, this Order shall govern and control.

(e) Modification of Stay. The automatic stay of Code § 362 is hereby modified with respect to Agent and Lenders to the extent necessary to effectuate the provisions of this Order.

(f) Financial Information; Insurance. The Trustee is hereby directed to deliver to Agent such financial and other information concerning the business and affairs of the Trustee and any of the Aggregate Collateral as may be required pursuant to the Prepetition Documents, the Postpetition Documents and as Agent shall reasonably request from time to time, including, on the first business day of each week through the Termination Date, (1) written reports comparing actual collections and expenditures (broken down by expense category) to those set forth in the Budget for the previous week ended Friday; and (2) a written report showing all accrued accounts payable as of the close of business on such previous Friday. The Trustee is also directed to allow Agent access to Debtor's premises for the purpose of enabling Agent to inspect and audit the Aggregate Collateral and the Debtor's books and records. Such access for such purpose shall be permitted during normal business hours and upon prior notice. The Trustee is further directed to deliver to Agent evidence, satisfactory to Agent, that the Aggregate Collateral is insured for the full replacement value thereof, that all insurance policies required by the Prepetition Documents, the Postpetition Documents or obtained in connection with the Aggregate Collateral are maintained in full force and effect, and that the Trustee is named as loss payee on all such property insurance policies and named as additional insured on all such liability policies as its interests may appear; provided, however, that all insurance proceeds of the Aggregate Collateral shall be

and remain subject to the Aggregate Liens. Any party in possession of any assets owned by Debtor's estate shall at the request of the Trustee deliver such assets to the Trustee.

(g)   No Waiver. This Order shall not constitute a waiver by Agent or any Lender of any of their respective rights under the Prepetition Documents, the Postpetition Documents, the Code or other applicable law, including, without limitation: (1) their right to later assert that, notwithstanding the terms and provisions of this Order, any of their interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e); or (2) their right to later assert a claim under Code § 507(b). Agent's failure, at any time or times hereafter, to require strict performance by the Trustee of any provision of this Order shall not waive, affect or diminish any right of Agent thereafter to demand strict compliance and performance therewith. No delay on the part of Agent in the exercise of any right or remedy under this Order shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy. None of the rights or remedies of Agent under this Order shall be deemed to have been suspended or waived by Agent unless such suspension or waiver is in writing, signed by a duly authorized officer of Agent, and directed to the Trustee specifying such suspension or waiver.

(h)   "Responsible Person". By accepting the Budget submitted to it by the Trustee and by taking any other actions pursuant to this Order, Agent and Lenders shall not: (1) be deemed to be in control of the operations of the Debtor or the bankruptcy estate of Debtor; or (2) be deemed to be acting as a "responsible person" with respect to the operation or management of the Debtor or the bankruptcy estate of Debtor.

(i)   Amendments. The Trustee, Agent and Lenders may enter into any amendments or modifications of the Postpetition Documents or the Budget without the need of further notice and hearing or order of this Court; provided that (a) such modifications or amendments to not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with this Court.

(j)   Release. Upon the date that the Postpetition Debt is paid in full, in cash, the Trustee, on behalf of Debtor's estate, shall execute and deliver to Agent and Lenders a general release of any and all claims and causes of action that could have been asserted or raised under or in connection with the Postpetition Documents.

(k) Trustee's Compensation. Agent's and Lenders' agreement to fund compensation to the Trustee (including actual and necessary expenses) shall be limited to the amounts set forth in the Budget and payment of such compensation shall be subject to the provisions of Paragraph 1(a) of this Order.

(l) Adequate Protection of Interests of Garnishor. As adequate protection of the interests of Garnishor in the Specified Accounts (the "Garnishor Interest") for the use of Cash Collateral, Garnishor is hereby granted the Garnishor Replacement Liens to secure an amount not to exceed $19,000 as security for repayment of the judgment described in that certain Order of Judgment entered as of January 1, 2009 in favor of Garnishor by the 18th Judicial Circuit Court of DuPage County (the "Judgment"); provided that the grant of such Garnishor Replacement Liens shall be limited to the extent, validity and priority of the Garnishor Interest over the Prepetition Liens and the proceeds thereof. Solely to the extent that the Garnishor Interest has priority over the Prepetition Liens (and the proceeds thereof), the Garnishor Replacement Liens: (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be First Priority Liens (subject to the Postpetition Liens, Permitted Liens and the Carveout) that are properly perfected, valid and enforceable without any further action by the Trustee or Garnishor and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case.

(m) Deposit Accounts; Authorization of Bank. All Cash Collateral maintained at Bank (whether in the Blocked Account, the Specified Accounts or otherwise) may, at Agent's direction, at any time and from time to time be transferred to separate accounts specified and maintained by Agent. The Trustee agrees, on behalf of the Debtor's estate, that no existing accounts (maintained at Bank or otherwise) shall be closed and no new deposit accounts shall be opened in the name of Debtor without Agent's prior written consent. Bank is authorized and directed to allow the Trustee full access to all accounts maintained by Bank in the name of Debtor (including, but not limited to, the Specified Accounts), with such access to include the right to issue withdrawal, payment, transfer or other fund disposition instructions with respect to all such accounts; provided that the Trustee

agrees that the usage of the portion of Cash Collateral consisting of funds in such accounts shall be subject to, and in accordance with, the terms of this Order.

8. Binding Effect.

(a) Stipulations and Findings. Notwithstanding anything herein or in the Postpetition Documents to the contrary, from the Relief Date until the date that is seventy-five (75) days after the Relief Date, (such period, the "Investigation Period"), the Trustee, or other party-in-interest with the requisite standing (each, a "Challenge Party"), shall be entitled to determine whether there exists a basis to assert a Challenge. If a Challenge Party other than the Trustee determines that there may be a Challenge, such Challenge Party must notify the Trustee of its demand that the Trustee initiate an appropriate action or adversary proceeding relating thereto during the Investigation Period. If and to the extent the Trustee receives timely notice of a Challenge by any Challenge Party, or the Trustee, as a Challenge Party, determines that there may be a Challenge, the stipulations, representations and finding in Paragraph 6(a) shall not apply to such timely asserted Challenge. If no such action is filed or taken during the Investigation Period (or such other later date as extended by the written consent of Agent and Lenders, each with respect to any continuation of the Investigation Period against such party, or by an order of this Court, for cause shown), the stipulations, representations, and findings in Paragraphs D and E of this Order, and the relief granted by and release contained in Paragraph 6(a) of this Order, shall be binding on all parties in interest in the Cases and their respective successors and assigns (including, without limitation, the Trustee). Nothing herein shall be deemed to grant standing in favor of any Challenge Party with respect to any Challenge absent further order of this Court and nothing herein shall preclude any Challenge Party from seeking standing (subject to objection by any other party in interest). The Trustee, if timely notified of a Challenge, shall retain the authority to prosecute, settle or compromise such Challenge in the exercise of its business judgment and subject to any applicable further order of court

(b) Order. Except as provided in Paragraph 8(a) of this Order, this Order shall be binding on all parties in interest in this Case and their respective successors and assigns, including, without limitation, the Trustee, except that the Trustee shall have the right to terminate this Order upon notice and a hearing. Upon the occurrence of the Termination

Date, or if the Trustee terminates this Order after notice and a hearing, if any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (a) the priority, validity, enforceability or effectiveness of any lien, security interest, priority, or other benefit authorized hereby with respect to any Cash Collateral used or Postpetition Debt incurred prior to the effective date of such subsequent order (and all such liens, security interests, priorities and other benefits shall be governed in all respects by the original provisions of this Order and Agent shall be entitled to all the rights, remedies, privileges and benefits, including the liens and priorities granted herein, with respect to the Postpetition Debt); (b) the releases set forth in Paragraph 6(h) (subject to the rights of parties in interest as set forth herein) or (b) subject to Paragraph 8(a), the stipulations and findings contained in Paragraphs D and E of this Order. Except as otherwise explicitly set forth in this Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Order or the agreements of the Trustee, Agent, Lenders herein or in the Prepetition Documents or the Postpetition Documents.

(c) Survival. The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered dismissing the Case. The terms and provisions of this Order, including the rights granted Agent under Code §§ 364(c), shall continue in full force and effect until all of the Aggregate Debt and other Obligations are indefeasibly paid in full and discharged.

United States Bankruptcy Judge

Dated: APR 14 2009

**EXHIBIT A**

**DEFINED TERMS**

1. Agent Replacement Liens. First Priority Liens in the Postpetition Collateral granted to Agent and Lenders, pursuant to this Order, subject only to: (a) the Prepetition Liens; (b) the Postpetition Liens; (c) Permitted Liens (as and to the extent applicable); and (d) the claim of the Trustee for the payment of fees under 28 U.S.C. § 1930(a).

2. Aggregate Collateral. Collectively, the Prepetition Collateral and the Postpetition Collateral.

3. Aggregate Debt. Collectively, the Prepetition Debt and the Postpetition Debt.

4. Aggregate Liens. Collectively, the Prepetition Liens, the Agent Replacement Liens and the Postpetition Liens.

5. Allowable 506(b) Amounts. Interest at the default rate under the Credit Agreement and all fees, costs, expenses and other charges due or coming due under the Prepetition Documents or in connection with the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget) to the extent allowable under Code § 506(b), including all reasonable out-of-pocket filing and recording fees, attorneys' and paralegals' fees and expenses, external and internal audit fees and expenses, closing fees, unused facility fees, letter of credit fees, and all other costs and expenses incurred by Agent and Lenders under the Prepetition Documents with respect to the Prepetition Debt, including such fees, costs and charges incurred before, on, or after the Filing Date in connection with: (a) the negotiation, preparation and submission of this Order and any other order or document related hereto; and (b) the representation of Agent and Lenders in the Case and in connection with the Prepetition Debt or the Aggregate Liens.

6. Allowed Claim. Any claim, as that term is defined in Code § 101, for which a proof of claim was timely and properly filed, or which has been or hereafter is listed by Debtor on its schedules as liquidated in amount and not disputed or contingent, provided that: (a) no objection to the allowance of the claim is timely interposed; or (b) if any objection to the allowance of the claim is timely interposed, the claim has been allowed.

7. Bank. JPMorgan Chase Bank, N.A.

8. Bank Product Obligations. All obligations, liabilities, contingent reimbursement obligations, fees, and expenses owing by Debtor to Wells Fargo Bank, a national banking association or any of its affiliates ("Bank Product Provider") pursuant to or evidenced by those agreements entered into from time to time by Debtor with Bank Product Provider in connecting with the obtaining of any of the Bank Products (as defined in the Credit Agreement) and irrespective of whether for the payment of money, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, and

including all such amounts that Debtor is obligated to reimburse to Agent or any Lender as a result of Agent or any Lender purchasing participations from, or executing indemnities or reimbursement obligations to, Bank Product Provider with respect to the Bank Products (as defined in the Credit Agreement) provided by such Bank Product Provider to Debtor.

9. Blocked Account. Deposit account number 708087002 maintained in the name of Lender at Bank, which account is subject to that certain Blocked Account Control Agreement among Bank, Debtor and Agent dated as of March 7, 2007.

10. Budget. The budget attached to this Order as Exhibit B, as amended, modified or supplemented from time to time, as agreed to in writing by the Agent and the Trustee.

11. Carveout. For the purposes of enabling the Debtor's estate to pay allowed fees and disbursements of each Carveout Professional as may be awarded from time to time pursuant to Code § 330, the aggregate amount set forth in Paragraph 4 of this Order; provided, however, that the Carveout may be used only subject to the terms and provisions of Paragraph 4 of this Order.

12. Carveout Professionals. The Trustee, Crane, Heyman, Simon, Welch & Clar, counsel for the Trustee, and Popowcer Katten, Ltd., accountants for the Trustee.

13. Case. This chapter 7 case of Debtor and any superseding Chapter 11 or Chapter 7 case of Debtor.

14. Cash Collateral. All "cash collateral," as that term is defined in Code § 363(a), in which Agent and Lenders have an interest, all deposits subject to setoff rights in favor of Agent and Lenders, and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including, without limitation, from the sale of inventory and the collection of accounts receivable. To the extent any such cash collected or received is not clearly identifiable as attributable to Prepetition Collateral or Postpetition Collateral, such cash shall be deemed to be proceeds of Prepetition Collateral.

15. Challenge. A claim or cause of action challenging the validity, perfection, enforceability or extent of Agent's Prepetition Liens or any other claims or causes of action against the Agent or Lenders, which the Trustee or another party-in-interest may bring, in accordance with Paragraph 8(a) of this Order.

16. Code. The United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*), as amended. Unless otherwise indicated, all statutory section references in this Order are to the Code.

17. Credit Agreement. That certain Credit Agreement dated as of February 22, 2007, by and among the Debtor, Agent and Lenders (as amended, modified or supplemented from time to time).

18.    Event of Default.  At Agent's and Lenders' election, any one or more of the following:  (a) the occurrence and continuance of any Event of Default first arising after the Relief Date under the Credit Agreement (other than by reason of Sections 7.4 or 7.5 of the Credit Agreement or any Existing Events of Default (as defined in the Postpetition Agreement));  (b) the Trustee fails to perform any of his obligations in strict accordance with the terms of this Order;  (c) the Trustee, without the consent of Agent and Lenders, seeks the use of Cash Collateral other than in accordance with the terms of this Order;  (d) the Trustee, without the consent of Agent and Lenders, files a motion to incur debt secured by a lien with priority equal to or superior to the Postpetition Liens or which is given superpriority administrative expense status under Code § 364(c) other than in accordance with the terms of this Order;  (e) the Trustee files a motion to conduct a Code § 363 sale of all or part of the Aggregate Collateral on terms unacceptable to Agent and Lenders;  (f) entry of any order authorizing any party in interest to reclaim any of the Aggregate Collateral, granting any party in interest relief from the automatic stay with respect to the Aggregate Collateral, or requiring that the Trustee turnover any of the Aggregate Collateral, in each case prior to full, final and indefeasible repayment of all Aggregate Debt;  (g) entry of any order requiring the Trustee to pay (prior to full, final and indefeasible repayment of all Aggregate Debt) any amounts in respect of claims under Code § 503(b)(9) or otherwise on account of goods shipped to Debtor prior to the Filing Date;  (h) any material representation or warranty made by the Trustee in any certificate, report or financial statement delivered to Agent or any Lender proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading);  (i) commencement of an adversary proceeding or contested matter objecting to the extent, validity or priority of the Prepetition Debt and/or the Prepetition Liens;  (j) the Order is modified, amended, vacated or stayed in any manner not consented to in writing by Agent; or (k) this Order is not entered within 21 days following the entry of the Interim Order.

19.    Fee Letter.  That certain fee letter dated as of February 22, 2007 by and between Debtor and Lender.

20.    Filing Date.  February 19, 2009.

21.    Final Hearing.  The final hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

22.    First Priority Liens.  Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, defenses, or setoffs, and which are otherwise unavoidable under any provisions of the Code.

23.    Garnishor.  Shannon Industrial Corporation.

24.    Garnishor Replacement Liens.  Replacement liens in the real property owned by Debtor located at 4400 W. Ohio, Chicago, IL 60624, 501 N. Sacramento Blvd., Chicago, IL 60612 and 1901 Carroll Avenue, Chicago, IL 60612 granted to Garnishor pursuant to this Order, solely to the extent that the Garnishor Interest had priority as of the

Filing Date over the Prepetition Liens in the Specified Accounts (including any Collateral proceeds deposited therein).

25. Interim Hearing. The interim hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

26. Interim Order. The order authorizing the Trustee to use Cash Collateral and incur Postpetition Debt pending the Final Hearing entered at or in connection with the Interim Hearing on terms acceptable to Agent and Lenders.

27. Maximum Amount. $10,591,457.13 minus any repayments of the Prepetition Debt and Postpetition Debt in accordance with Paragraph 6(d) of this Order, exclusive of Postpetition Charges and Allowable 506(b) Amounts.

28. Permitted Liens. Collectively, (a) liens in favor of third parties upon the Prepetition Collateral, which third-party liens, as of the Filing Date: (i) had priority under applicable law over the Prepetition Liens, (ii) were not subordinated by agreement or applicable law, and (iii) were non-avoidable, valid, properly perfected and enforceable as of the Filing Date; (b) the Carveout; and (c) the claim of the Trustee for the payment of fees under 28 U.S.C. § 1930(a).

29. Postpetition Agreement. That certain Postpetition Agreement dated as of March 19, 2009, by and among Debtor, Agent and Lenders.

30. Postpetition Charges. All fees, costs, expenses, interest at the rate provided by Section 2.3 of the Postpetition Agreement, and other charges due or coming due in connection with the Postpetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), including, without limitation, all out-of-pocket filing and recording fees, attorneys', paralegals' and consultants' fees and expenses, field examinations costs and charges, appraisal fees, external and internal audit fees and expenses, closing fees, unused facility fees, and other fees, costs, expenses and other charges incurred by Agent or Lenders or otherwise arising under this Order or the Postpetition Documents with respect to the Postpetition Debt, including such fees, costs and charges incurred before, on, or after the Filing Date in connection with: (a) the negotiation, preparation and submission of the Postpetition Documents, this Order and any other order or document related hereto; and (b) the representation of Agent and Lenders in the Cases in connection with the Postpetition Debt or the Postpetition Liens.

31. Postpetition Collateral. All of the real and personal property of the Debtor of any description whatsoever, wherever located and whenever arising or acquired, including, without limitation, all cash, accounts, inventory, equipment, fixtures, chattel paper, and general intangibles (including, claims and recoveries under Code § § 544, 547, 548, 549, 550 and 553), and all proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

32.   Postpetition Debt.   (a) All indebtedness or Obligations of Debtor to Agent and Lenders incurred on or after the Filing Date pursuant to this Order, the Postpetition Documents or otherwise, including any advances made by Agent to pay Allowable 506(b) Amounts, plus (b) the Postpetition Charges, plus (c) Bank Product Obligations.

33.   Postpetition Documents.   The Postpetition Agreement and all documents that Agent and Lenders find reasonably necessary to implement the transactions contemplated by the Postpetition Agreement.

34.   Postpetition Liens.   First Priority Liens in the Aggregate Collateral, subject only to the Prepetition Liens and Permitted Liens.

35.   Prepetition Collateral.   All of the Collateral (as that term is defined in the Credit Agreement) existing as of the Filing Date, and all proceeds and products thereof.

36.   Prepetition Debt.   All indebtedness or obligations under the Prepetition Documents as of the Filing Date, including all fees, interest, expenses and Bank Product Obligations.

37.   Prepetition Documents.   The Credit Agreement and the Loan Documents (as that term is defined in the Credit Agreement).

38.   Prepetition Liens.   Agent's and Lenders' asserted security interests in the Prepetition Collateral under the Prepetition Documents, subject only to:  (a) Permitted Liens; and (b) the claim of the Trustee for the payment of fees under 28 U.S.C. § 1930(a).

39.   Relief Date.   March 10, 2009, the date of entry of an Order for Relief in this Case.

40.   Specified Accounts.   Deposit account number 660576737 and deposit account number 662648690 maintained in the name of Debtor at Bank.

41.   Termination Date.   At Agent's election, the earliest to occur of:  (a) the date on which Agent provides written notice to the Trustee of the occurrence of an Event of Default, pursuant to which notice Agent has elected to declare the occurrence of the Termination Date; (b) the date that this Order is modified after the Final Hearing in a manner unacceptable to Agent and Lenders; (c) the Trustee's written notice of its election to terminate this Order, subject to Paragraph 8(b), (d) the date the Aggregate Debt is reduced to zero (subject to the payment of any expenses in the Budget that have been incurred and not yet paid as of such date) and (e) July 17, 2009 (as such date may be extended by written agreement of the Trustee and Agent).

42.   Trustee.   Gregg Szilagyi, and any subsequently appointed trustee in this Case.

**EXHIBIT B**

**BUDGET**

# LAKEWOOD ENGINEERING & MANUFACTURING

## Estimated Post-Petition Cash Disbursements Budget - Updated 3/31/09

Weekly Covering Period of March 23, 2009 thru July 17, 2009

| PERIOD #: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WEEK ENDING: | 03/27/09 | 04/03/09 | 04/10/09 | 04/17/09 | 04/24/09 | 05/01/09 | 05/08/09 | 05/15/09 | 05/22/09 | 05/29/09 | 06/05/09 | 06/12/09 | 06/19/09 | 06/26/09 | 07/03/09 | 07/10/09 | 07/17/09 | TOTAL |
| **ESTIMATED CASH DISBURSEMENTS:** | | | | | | | | | | | | | | | | | | |
| Payroll (see detail below) | 6,208 | 9,179 | 9,179 | 9,179 | 9,179 | 9,179 | 9,179 | 8,956 | 8,075 | 8,075 | 3,631 | 3,631 | 3,631 | 3,631 | 3,631 | 3,631 | 1,452 | 109,825 |
| Incentive/Retention Bonuses | - | - | - | - | - | - | - | - | - | 25,000 | - | - | - | - | - | - | 25,000 | 50,000 |
| Operating Expenses: | | | | | | | | | | | | | | | | | | |
| Insurance | 121,375 | - | - | 114,200 | - | - | - | 114,200 | - | - | - | - | 14,300 | - | - | - | 14,300 | 380,375 |
| Heating | 50,000 | - | - | 20,000 | - | - | - | 20,000 | - | - | - | - | 5,000 | - | - | - | 5,000 | 100,000 |
| Electricity | 30,000 | - | - | 15,000 | - | - | - | 15,000 | - | - | - | - | 11,250 | - | - | - | 11,250 | 82,500 |
| Water | 5,000 | - | - | 5,000 | - | - | - | 5,000 | - | - | - | - | 3,750 | - | - | - | 3,750 | 22,500 |
| Phones | 2,500 | - | - | 1,000 | - | - | - | 1,000 | - | - | - | - | 750 | - | - | - | 750 | 6,000 |
| Alarm Service | 1,400 | - | - | 400 | - | - | - | 400 | - | - | - | - | 400 | - | - | - | 400 | 3,000 |
| Equipment Rental | 4,800 | - | - | - | 4,800 | - | - | - | 4,800 | - | - | - | - | - | - | - | - | 13,800 |
| Independent Contractors | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | - | - | - | - | - | 18,000 |
| Other | 8,250 | 6,250 | 6,250 | 6,250 | 8,750 | 8,750 | 8,750 | 8,750 | 8,750 | 8,750 | 4,750 | 8,750 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 130,000 |
| Total Operating Expenses | 224,825 | 7,750 | 7,750 | 163,350 | 14,850 | 10,250 | 10,250 | 165,450 | 14,850 | 10,250 | 10,250 | 10,250 | 42,450 | 7,000 | 7,000 | 7,000 | 42,450 | 786,175 |
| Trustee Fees (Based on graduated fee structure) | - | - | - | 38,200 | - | - | - | 57,000 | - | - | - | 16,420 | - | - | - | - | 144,121 | 265,831 |
| Trustee Accountant Fees | - | 10,000 | - | - | - | - | - | - | - | - | - | - | - | - | 7,500 | - | 7,500 | 25,000 |
| Legal Counsel | 50,000 | - | - | - | - | - | - | 50,000 | - | - | - | - | - | - | - | - | 50,000 | 150,000 |
| **TOTAL ESTIMATED CASH DISBURSEMENTS BEFORE REAL ESTATE** | 290,833 | 28,929 | 16,929 | 210,729 | 24,029 | 19,429 | 19,429 | 281,806 | 22,926 | 43,326 | 13,881 | 30,301 | 46,081 | 10,631 | 18,131 | 10,631 | 278,823 | 1,344,631 |
| **REAL ESTATE COSTS:** | | | | | | | | | | | | | | | | | | |
| Sales commission - 6% Buyers' Premium | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Marketing Costs | - | - | - | 10,000 | - | - | - | - | - | - | - | - | - | - | - | - | - | 10,000 |
| Roof & Structural Inspections & Surveys | - | - | - | 18,000 | - | - | - | - | - | - | - | - | - | - | - | - | - | 18,000 |
| Closing Costs | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 91,200 | 91,200 |
| Property Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 471,000 | 471,000 |
| Cost of Environmental Remediation | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 475,000 | 475,000 |
| **TOTAL REAL ESTATE COSTS** | - | - | - | 28,000 | - | - | - | - | - | - | - | - | - | - | - | - | 1,037,200 | 1,065,200 |
| **TOTAL ESTIMATED CASH DISBURSEMENTS** | 290,833 | 28,929 | 16,929 | 238,729 | 24,029 | 19,429 | 19,429 | 281,806 | 22,925 | 43,326 | 13,881 | 30,301 | 46,081 | 10,631 | 18,131 | 10,631 | 1,307,723 | 2,411,831 |

# LAKEWOOD ENGINEERING & MANUFACTURING

## Estimated Post-Petition Cash Disbursements Budget - PAYROLL DETAIL

Weekly Covering Period of March 23, 2009 thru July 17, 2009

| PERIOD #: → | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WEEK ENDING: → | 03/27/09 | 04/03/09 | 04/10/09 | 04/17/09 | 04/24/09 | 05/01/09 | 05/08/09 | 05/15/09 | 05/22/09 | 05/29/09 | 06/05/09 | 06/12/09 | 06/19/09 | 06/26/09 | 07/03/09 | 07/10/09 | 07/17/09 | TOTAL |
| Job Title - Termination Date | | | | | | | | | | | | | | | | | | |
| Asst. Controller - 7/14/09 | 1,962 | 1,962 | 1,962 | 1,962 | 1,962 | 1,962 | 1,962 | 1,962 | 1,962 | 1,962 | 1,962 | 1,962 | 1,962 | 1,962 | 1,962 | 1,962 | 785 | 32,169 |
| Treasury - 5/14/09 | 817 | 817 | 817 | 817 | 817 | 817 | 817 | 654 | - | - | - | - | - | - | - | - | - | 6,375 |
| Cash Application Clerk - 7/14/09 | 728 | 728 | 728 | 728 | 728 | 728 | 728 | 728 | 728 | 728 | 728 | 728 | 728 | 728 | 728 | 728 | 291 | 11,936 |
| Customer Service Rep - 5/29/09 | - | 1,152 | 1,152 | 1,152 | 1,152 | 1,152 | 1,152 | 1,152 | 1,152 | 1,152 | - | - | - | - | - | - | - | 10,366 |
| Customer Service Rep - 5/29/09 | - | 1,049 | 1,049 | 1,049 | 1,049 | 1,049 | 1,049 | 1,049 | 1,049 | 1,049 | - | - | - | - | - | - | - | 9,441 |
| Shipping - Material Handler - 5/29/09 | 548 | 548 | 548 | 548 | 548 | 548 | 548 | 548 | 548 | 548 | - | - | - | - | - | - | - | 5,476 |
| Shipping Material Handler - 5/29/09 | 544 | 544 | 544 | 544 | 544 | 544 | 544 | 544 | 544 | 544 | - | - | - | - | - | - | - | 5,440 |
| TOTAL PAYROLL BEFORE AGENCY FEES & EXPENSES | 4,598 | 6,799 | 6,799 | 6,799 | 6,799 | 6,799 | 6,799 | 6,636 | 5,983 | 5,983 | 2,690 | 2,690 | 2,690 | 2,690 | 2,690 | 2,690 | 1,076 | 81,203 |
| Plus: Outside Agency Fees & Expenses | 1,609 | 2,380 | 2,380 | 2,380 | 2,380 | 2,380 | 2,380 | 2,322 | 2,094 | 2,094 | 941 | 941 | 941 | 941 | 941 | 941 | 377 | 28,421 |
| TOTAL PAYROLL | 6,206 | 9,179 | 9,179 | 9,179 | 9,179 | 9,179 | 9,179 | 8,958 | 8,076 | 8,076 | 3,631 | 3,631 | 3,631 | 3,631 | 3,631 | 3,631 | 1,453 | 109,625 |

Note: 1) Outside Payroll Agency Fees & Expenses at Rate of 35% which includes payroll taxes, workers' compensation, and outside payroll agency fees.